IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MATTHEW ANDERSEN, MORRIS BISHOP, THEOPHILUS BOYKIN JR., PATRICK CASEY, MARY MARGARET DEMPSEY, RORY HEHIR, KEVIN HENRICHSEN, CODY HRABAK, CHRISTOPHER JACKSON, JOSEPH JOHNSON, ALBERT LABAK, TIFFANY MUEHLIS, DERRICK NASH, MARK NICKEL, MARK OBOG, KEVIN O'GRADY, MICHAEL PAGANI, JEFFREY RAKOWIECKI, JAMES RICHARD, MICHAEL RONCAL, GABRIEL SANTANA, SCOTT SANTOYO, AND TIMOTHY TESCH, | CIVIL ACTION NO. 1:25-cv-03362 |
| Plaintiffs, | |
| v. | |
| CITY OF CHICAGO, | |
| PAUL COGSWELL, individually and in his official capacity as Assistant Commissioner for the Chicago Fire Department, | |
| SANJEEV MIKHA'IL, individually and in her official capacity as Assistant Commissioner for the Chicago Fire Department, | |
| Defendants. | |

## AMENDED COMPLAINT

Plaintiffs Matthew Andersen, Morris Bishop, Theophilus Boykin Jr., Patrick Casey, Mary

Margaret Dempsey, Rory Hehir, Kevin Henrichsen, Cody Hrabak, Christopher Jackson, Joseph

Johnson, Albert Labak, Tiffany Muehleis, Derrick Nash, Mark Nickel, Mark Obog, Kevin

O'Grady, Michael Pagani, Jeffrey Rakowiecki, James Richard, Michael Roncal, Gabriel Santana,

Scott Santoyo, and Timothy Tesch (collectively Plaintiffs) file this Amended Complaint with written consent from Defendants pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure against Defendants City of Chicago ("Chicago"), Assistant Commissioner Paul Cogswell, and Investigator Sanjeev Mikha'il and in support state the following:

<u>**PRELIMINARY STATEMENT**</u>

1.      Plaintiffs are all members of Local 2 of the International Association of Fire Fighters ("IAFF"), which is the union which represents fire fighters who work for the Chicago Fire Department ("CFD").

2.      For 1,422 days, members of IAFF have been working for the CFD without a contract. During that period, members of IAFF Local 2 have faithfully served the citizens of Chicago while managing staffing shortages, broken equipment, crumbling and outdated fire apparatuses, an insufficient number of ambulances, and numerous other issues.

3.      These continued issues with Chicago have resulted in significant operational and safety challenges for Local 2 members as they work for the CFD. Unfortunately, within the last two years, four IAFF Local 2 members have died, and three other IAFF Local 2 members have been severely injured.

4.      In response to Chicago's continued indifference to these issues, IAFF Local 2 has taken steps to raise public awareness of these problems and the City's failure to bargain in good faith on a new contract, which has included addressing local media, holding rallies during the Democratic National Convention in August 2024, and issuing a Vote of No Confidence against CFD leadership and Chicago Mayor Brandon Johnson in December 2024.

5.    To this day, IAFF Local 2 continues to publicly exert pressure on Chicago and CFD leadership to address and resolve the issues which are impacting the day-to-day operations of the CFD.

6.    Against this backdrop, members of the CFD's Internal Affairs Division seized and searched the personal vehicles of IAFF Local 2 members on February 27 and 28, 2025. These warrantless car searches uncovered no illegalities or wrongdoing.

7.    It is believed that CFD has never searched and seized nor attempted the search and seizure of the personal vehicles of CFD employees.

8.    Plaintiffs are filing this Amended Complaint to address Defendants' illegal searches and seizures of their personal vehicles in February 2025, to enjoin Defendants from conducting additional illegal searches and seizures of Plaintiffs' personal property, and to prevent Defendants from using the threat of future searches and seizures while IAFF Local 2 and Chicago continue to negotiate a contract.

9.    Plaintiffs are seeking a declaratory judgment and injunctive relief to prohibit Defendants from conducting any future seizures and searches of the personal property of IAFF Local 2 members pursuant to the Fourth and Fourteenth Amendments to the United States Constitution; Section I, Article 6 of the State of Illinois Constitution; 28 U.S.C. §§ 2201 and 2022; and 42 U.S.C. §§ 1983 and 1988. Plaintiffs are also pursuing compensatory damages, attorneys' fees and costs, and all other relief available under 42 U.S.C. §§ 1983 and 1988.

## THE PARTIES

10.    Matthew Andersen is an adult individual and member of IAFF Local 2 who resides in Chicago, Illinois. Andersen is a "citizen of the United States" as defined by 42 U.S.C.

3

§ 1983. During the Collective Action Period, Plaintiff Andersen worked for the CFD when his personal vehicle was searched by Defendants on February 27, 2025.

11.     Morris Bishop is an adult individual and member of IAFF Local 2 who resides in Chicago, Illinois. Bishop is a "citizen of the United States" as defined by 42 U.S.C. § 1983. During the Collective Action Period, Plaintiff Bishop worked for the CFD when his personal vehicle was searched by Defendants on February 28, 2025.

12.     Theophilus Boykin Jr. is an adult individual and member of IAFF Local 2 who resides in Chicago, Illinois. Boykin is a "citizen of the United States" as defined by 42 U.S.C. § 1983. During the Collective Action Period, Plaintiff Boykin worked for the CFD when his personal vehicle was searched by Defendants on February 28, 2025.

13.     Patrick Casey is an adult individual and member of IAFF Local 2 who resides in Chicago, Illinois. Casey is a "citizen of the United States" as defined by 42 U.S.C. § 1983. During the Collective Action Period, Plaintiff Casey worked for the CFD when his personal vehicle was searched by Defendants on February 28, 2025.

14.     Mary Margaret Dempsey is an adult individual and member of IAFF Local 2 who resides in Chicago, Illinois. Dempsey is a "citizen of the United States" as defined by 42 U.S.C. § 1983. During the Collective Action Period, Plaintiff Dempsey worked for the CFD when her personal vehicle was searched by Defendants on February 28, 2025.

15.     Rory Hehir is an adult individual and member of IAFF Local 2 who resides in Chicago, Illinois. Hehir is a "citizen of the United States" as defined by 42 U.S.C. § 1983. During the Collective Action Period, Plaintiff Hehir worked for the CFD when his personal vehicle was searched by Defendants on February 28, 2025.

16.     Kevin Henrichsen is an adult individual and member of IAFF Local 2 who resides in Chicago, Illinois. Henrichsen is a "citizen of the United States" as defined by 42 U.S.C. § 1983. During the Collective Action Period, Plaintiff Henrichsen worked for the CFD when his personal vehicle was searched by Defendants on February 27, 2025.

17.     Cody Hrabak is an adult individual and member of IAFF Local 2 who resides in Chicago, Illinois. Hrabak is a "citizen of the United States" as defined by 42 U.S.C. § 1983. During the Collective Action Period, Plaintiff Hrabak worked for the CFD when his personal vehicle was searched by Defendants on February 27, 2025.

18.     Christopher Jackson is an adult individual and member of IAFF Local 2 who resides in Chicago, Illinois. Jackson is a "citizen of the United States" as defined by 42 U.S.C. § 1983. During the Collective Action Period, Plaintiff Jackson worked for the CFD when his personal vehicle was searched by Defendants on February 27, 2025.

19.     Joseph Johnson is an adult individual and member of IAFF Local 2 who resides in Chicago, Illinois. Johnson is a "citizen of the United States" as defined by 42 U.S.C. § 1983. During the Collective Action Period, Plaintiff Johnson worked for the CFD when his personal vehicle was searched by Defendants on February 28, 2025.

20.     Albert Labak is an adult individual and member of IAFF Local 2 who resides in Chicago, Illinois. Labak is a "citizen of the United States" as defined by 42 U.S.C. § 1983. During the Collective Action Period, Plaintiff Labak worked for the CFD when his personal vehicle was searched by Defendants on February 28, 2025.

21.     Tiffany Muehleis is an adult individual and member of IAFF Local 2 who resides in Chicago, Illinois. Muehleis is a "citizen of the United States" as defined by 42 U.S.C. § 1983.

During the Collective Action Period, Plaintiff Muehleis worked for the CFD when her personal vehicle was searched by Defendants on February 28, 2025.

22.     Derrick Nash is an adult individual and member of IAFF Local 2 who resides in Chicago, Illinois. Nash is a "citizen of the United States" as defined by 42 U.S.C. § 1983. During the Collective Action Period, Plaintiff Nash worked for the CFD when his personal vehicle was searched by Defendants on February 27, 2025.

23.     Mark Nickel is an adult individual and member of IAFF Local 2 who resides in Chicago, Illinois. Nickel is a "citizen of the United States" as defined by 42 U.S.C. § 1983. During the Collective Action Period, Plaintiff Nickel worked for the CFD when his personal vehicle was searched by Defendants on February 27, 2025.

24.     Mark Obog is an adult individual and member of IAFF Local 2 who resides in Chicago, Illinois. Obog is a "citizen of the United States" as defined by 42 U.S.C. § 1983. During the Collective Action Period, Plaintiff Obog worked for the CFD when his personal vehicle was searched by Defendants on February 28, 2025.

25.     Kevin O'Grady is an adult individual and member of IAFF Local 2 who resides in Chicago, Illinois. O'Grady is a "citizen of the United States" as defined by 42 U.S.C. § 1983. During the Collective Action Period, Plaintiff O'Grady worked for the CFD when his personal vehicle was searched by Defendants on February 27, 2025.

26.     Michael Pagani is an adult individual and member of IAFF Local 2 who resides in Chicago, Illinois. Pagani is a "citizen of the United States" as defined by 42 U.S.C. § 1983. During the Collective Action Period, Plaintiff Pagani worked for the CFD when his personal vehicle was searched by Defendants on February 27, 2025.

27.     Jeffrey Rakowiecki is an adult individual and member of IAFF Local 2 who resides in Chicago, Illinois. Rakowiecki is a "citizen of the United States" as defined by 42 U.S.C. § 1983. During the Collective Action Period, Plaintiff Rakowiecki worked for the CFD when his personal vehicle was searched by Defendants on February 28, 2025.

28.     James Richard is an adult individual and member of IAFF Local 2 who resides in Chicago, Illinois. Richard is a "citizen of the United States" as defined by 42 U.S.C. § 1983. During the Collective Action Period, Plaintiff Richard worked for the CFD when his personal vehicle was searched by Defendants on February 27, 2025.

29.     Michael Roncal is an adult individual and member of IAFF Local 2 who resides in Chicago, Illinois. Roncal is a "citizen of the United States" as defined by 42 U.S.C. § 1983. During the Collective Action Period, Plaintiff Roncal worked for the CFD when his personal vehicle was searched by Defendants on February 28, 2025.

30.     Gabriel Santana is an adult individual and member of IAFF Local 2 who resides in Chicago, Illinois. Santana is a "citizen of the United States" as defined by 42 U.S.C. § 1983. During the Collective Action Period, Plaintiff Santana worked for the CFD when his personal vehicle was searched by Defendants on February 28, 2025.

31.     Scott Santoyo is an adult individual and member of IAFF Local 2 who resides in Chicago, Illinois. Santoyo is a "citizen of the United States" as defined by 42 U.S.C. § 1983. During the Collective Action Period, Plaintiff Santoyo worked for the CFD when his personal vehicle was searched by Defendants on February 28, 2025.

32.     Timothy Tesch is an adult individual and member of IAFF Local 2 who resides in Chicago, Illinois. Tesch is a "citizen of the United States" as defined by 42 U.S.C. § 1983.

During the Collective Action Period, Plaintiff Tesch worked for the CFD when his personal vehicle was searched by Defendants on February 28, 2025.

33.     Defendant City of Chicago is a municipality incorporated and organized pursuant to the laws of the State of Illinois. Defendant Chicago operates the CFD and is responsible for the policies, practices, and customs of the CFD. As a municipal employer, Defendant Chicago is also responsible for the acts of all its employees while acting within the scope of their employment, which includes employees of the CFD. At all times relevant, Defendant Chicago was a "person" within meaning of 42 U.S.C. § 1983, with the authority to sue and be sued.

34.     Defendant Cogswell is currently an Assistant Commissioner of the CFD. In his role as Assistant Commissioner, Defendant Cogswell oversees and manages the investigations conducted by the Internal Affairs Division of the CFD. In February 2025, Defendant Cogswell had final authority to approve and conduct the searches of Plaintiffs' personal vehicles.

35.     Defendant Mikha'il is currently a Supervising Investigator assigned to the Internal Affairs Division of the CFD. In February 2025, Defendant Mikha'il conducted the searches of Plaintiffs' personal vehicles with Defendant Cogswell.

36.     At all times relevant, Defendant Cogswell acted under color of state law and is a "person" within meaning of 42 U.S.C. § 1983, subject to liability for violations of the Fourth and Fourteenth Amendments to the United States Constitution.

## <u>JURISDICTION AND VENUE</u>

37.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that Plaintiffs' claims arise under the laws of the United States and Plaintiffs seek redress for violations of federal laws. The Court has supplemental jurisdiction over the remaining claims

pursuant to 28 U.S.C. § 1367, because such claims are so closely related to Plaintiffs' federal

claims that they form part of the same case or controversy.

38.     Venue is proper in this district pursuant to 28 U.S.C. § 1391, as Defendants are

located within the Northern District of Illinois and a substantial part of the events and omissions

giving rise to this action occurred within the Northern District of Illinois.

## FACTUAL BACKGROUND

### A.     IAD and its Role as the Investigative Arm of the CFD

39.     The CFD's Internal Affairs Division ("IAD") investigates allegations of

misconduct against sworn and civilian CFD members.

40.     From April 1, 2020, Defendant Cogswell has overseen and managed all aspects of

the IAD in his capacity as an Assistant Commissioner of the CFD. As head of the IAD, Cogswell

is the primary supervisor for all IAD personnel, which includes a team of investigators,

investigative specialists, and two managerial-level employees.

41.     When IAD receives a complaint or report of misconduct, IAD will first determine

if a policy or rule has been violated. If there is a policy or rule violation, IAD will then determine

if it will handle the investigation or turn the matter over to another Chicago agency, like the

Chicago Police Department or the Office of Inspector General.

42.     If IAD handles the investigation, then Defendant Cogswell will work with IAD

staff to determine what actions IAD will take.

43.     During an IAD investigation, IAD personnel will consult with other members of

the CFD. For instance, if the matter involves union employees, IAD may consult with the CFD's

Assistant Commissioner for Labor to determine if they are prohibited from taking certain actions

pursuant to a collective bargaining agreement. If an IAD investigation involves a unique legal issue, the IAD will consult with the CFD General Counsel.

44.     CFD's General Counsel reports directly to the CFD Fire Commissioner and they provide legal counsel to the Fire Commissioner, CFD command staff, and all CFD Department division heads, including Defendant Cogswell, who is the head of the IAD.

45.     CFD's General Counsel is currently Evan Haim, and it is believed that General Counsel Haim discussed and reviewed IAD's plan to search the personal vehicles of IAFF Local 2 members before the searches took place on February 27 and 28, 2025.

**B.      IAD Lacked Reasonable Suspicion to**
        **Conduct the February 27, 2025 Vehicle Searches**

46.     Plaintiffs all work at the fire station located at 3918 N. Harlem Avenue, Chicago, Illinois ("Engine 86") and comprise a majority of the Engine 86 personnel.

47      At approximately 4:00pm on February 27, 2025, Defendant Cogswell, Defendant Mikha'il, and Deputy Fire Commissioner John Gies summoned Plaintiffs and other Engine 86 personnel who were on shift to the apparatus floor.

48.     After everyone gathered, Defendant Cogswell addressed all Engine 86 personnel and explained that IAD was at Engine 86 that day looking for guns and weapons.

49.     Defendant Cogswell spoke for a few minutes before ending his address to Plaintiffs and other Engine 86 personnel by stating, "if you have something, admit to it right now and make it a lot easier for yourself." When no one replied, Defendant Cogswell announced that IAD would immediately conduct searches of the personal vehicles of all Engine 86 personnel. Defendant Cogswell stated that if anyone refused to cooperate with IAD, they would be disciplined.

50.     All Engine 86 personnel were then ordered to go to the parking lot and stand next to their personal vehicle with their car keys in hand.

51.     Some Plaintiffs initially refused to cooperate with the vehicle searches, and Defendants Cogswell and Mikha'il told those Plaintiffs, in front of all Engine 86 personnel, that if they did not cooperate, they would "receive an IR number", which refers to the CFD's disciplinary process. Defendants Cogswell and Mikha'il repeated their threats of discipline to Plaintiffs throughout the car search process.

52.     On February 27, 2025, Defendants Cogswell and Mikha'il searched the personal vehicles of eleven IAFF Local 2 members: Plaintiffs Andersen, Heinrichsen, Hrabak, Jackson, Nash, Nickel, O'Grady, Pagani, Richard, Santoyo, and Tesch. None of these Plaintiffs had the same type of vehicle. Instead, each car that IAD searched on that day was a different manufacturer, model, make, and year. Nearly all the cars were a different color. Despite these differences, Defendants Cogswell and Mikha'il searched each car, including the interior passenger areas, the glove compartment, and consoles. Defendants Cogswell and Mikha'il also searched the trunks of some cars.

53.     During the vehicle searches, Defendants Cogswell and Mikha'il indicated that these searches were based off an anonymous tip.

54.     During the vehicle searches, Defendants Cogswell and Mikha'il frequently made statements to Plaintiffs that were intended to elicit an incriminating response. For instance, some Plaintiffs were told that IAD knew who did and did not have a concealed carry permit. Other Plaintiffs were directly asked if they had a firearms license. None of the Plaintiffs responded to these questions and statements from Defendants Cogswell and Mikha'il.

11

55.     After the vehicle searches were finished, Defendants Cogswell and Mikha'il searched different areas of Engine 86.

56.     Defendants Cogswell and Mikha'il failed to find any firearms during these vehicle searches or their search of Engine 86 on February 27, 2025.

**C.     IAD Lacked Reasonable Suspicion to
        Conduct the February 28, 2025 Vehicle Searches**

57.     At approximately 7:50am on February 28, 2025, Defendants Cogswell and Mikha'il returned to Engine 86, and they were accompanied by Deputy District Chief Kelly Burns and Battalion Chief Samuel Kamberis. After roll call, all Engine 86 personnel were told that IAD would be conducting searches of their personal vehicles.

58.     The Plaintiffs on duty that day requested union representation before the vehicle searches took place, but that request was denied. Defendant Mikha'il told Plaintiffs that "she spoke with someone" and that Defendants' position was that union representation was only required for investigatory interviews and not searches. Plaintiffs were then specifically told that if they did not cooperate with the vehicle searches, they would be disciplined.

59.     All Engine 86 members were then ordered to go to the parking lot and stand next to their personal vehicle with their car keys in hand.

60.     On February 28, 2025, Defendants Cogswell and Mikha'il searched the personal vehicles of twelve IAFF Local 2 members: Plaintiffs Bishop, Boykin, Casey, Dempsey, Hehir, Johnson, Labak, Muehleis, Obog, Roncal, Rakowiecki, and Santana. Again, none of these Plaintiffs had the same type of vehicle. Instead, each car that IAD searched on that day was a different manufacturer, model, make, and year. Nearly all the cars were a different color. Despite these differences, Defendants Cogswell and Mikha'il searched each car, including the interior

passenger areas, the glove compartment, and consoles. Defendants Cogswell and Mikha'il also searched closed containers within some cars and the trunks other cars.

61.     During the vehicle searches, Defendants Cogswell and Mikha'il frequently made statements to Plaintiffs that were intended to elicit an incriminating response. For instance, some Plaintiffs were told that IAD knew who did and did not have a concealed carry permit. Other Plaintiffs were directly asked if they had a firearms license. None of the Plaintiffs responded to these questions and statements from Defendants Cogswell and Mikha'il.

62.     Defendants Cogswell and Mikha'il failed to find any firearms during the vehicle searches or their search of Engine 86 on February 28, 2025.

**D.     Defendants Lacked a Factual or Legal Basis to
         Conduct Searches of Plaintiffs' Personal Vehicles in February 2025**

63.     Plaintiffs did not consent to the search of their personal vehicles by Defendants on February 27 and 28, 2025.

64.     Defendants Cogswell and Mikha'il threatened Plaintiffs with discipline and loss of employment on February 27 and 28, 2025, if they refused to permit IAD to conduct searches of their personal vehicles.

65.     Based on their interactions with Defendants Cogswell and Mikha'il on February 27 and 28, 2025, Plaintiffs reasonably believed that if they did not cooperate with IAD's vehicle searches, they would lose their jobs.

66.     Upon information and belief, Defendants conducted searches of Plaintiffs' personal vehicles on February 27 and 28, 2025 based on an anonymous report that claimed someone who worked at Engine 86 was in possession of a firearm.

13

67.     Upon information and belief, the anonymous report that Defendants relied upon to search Plaintiffs' personal vehicles did not provide the name of the Engine 86 personnel who allegedly brought a firearm to work.

68.     Upon information and belief, the anonymous report that Defendants relied upon to search Plaintiffs' personal vehicles did not specify what type of car the firearm was located within.

69.     Upon information and belief, the anonymous report that Defendants relied upon to search Plaintiffs' personal vehicles did not specify what area of the car the firearm was located within.

70.     Upon information and belief, Defendants conducted searches of Plaintiffs' personal vehicles on February 27 and 28, 2025 based on their suspicion that Engine 86 personnel had violated the following workplace rules: (1) Section 2.11 of CFD General Order 13-007 and (2) the City of Chicago Firearms in the Workplace Policy.

71.     Section 2.11 of CFD General Order 13-007 prohibits "[k]eeping of weapons of any kind or nature in or about the premises of the Fire Department." A violation of Section 2.11 of CFD General Order 13-007 can result in the termination of employment for a CFD employee.

72.     The City of Chicago Firearms in the Workplace Policy ("Chicago Firearms Policy") "prohibits all non-peace officer employees from carrying or possessing firearms inside buildings owned or controlled by the City."

73.     The Chicago Firearms Policy does not prohibit employees from carrying firearms in their personal vehicles. Instead, the Chicago Firearms Policy only prohibits the following:

        a.      While on duty, a City employee who has obtained a license to carry a concealed firearm in compliance with applicable state and federal laws may carry a concealed firearm in any area where firearms are not prohibited by federal, state, or local law.

14

b. It is a violation of this policy for an employee, while on or off duty, to carry, transfer, or store a firearm inside a building or that portion of a building owned or controlled by the City.

c. It is a violation of this policy for an employee, while on or off duty, to carry, transfer, or store a firearm inside a City-owned or leased vehicle.

d. It is violation of this policy for an employee, while on duty, to carry a firearm inside any private residence or residential building without express written consent from the owner.

e. It is a violation of this policy for an employee, while on or off duty, to violate any federal, state, or local laws relating to owning, possessing, carrying, transferring, storing, displaying, or discharging firearms, including, but not limited to, the Illinois Firearm Concealed Carry Act; the Illinois Criminal Code - Article 5, Deadly Weapons, 720 ILCS 5/Art. 5 et. seq.; and any City of Chicago Municipal Code provision, or rule or regulation promulgated thereunder, pertaining to firearms and other weapons.

74. The Chicago Firearms Policy does not authorize the search of an employee's personal property, but states that the "City reserves the right to authorize searches for prohibited weapons on its property when a violation is reported or when probable cause or reasonable suspicion is present. Refusal to permit such a search may result in discipline up to and including discharge." *See* Policy Guidelines section of the Chicago Firearms Policy.

75. Upon information and belief, there are no Chicago policies which permit CFD to conduct the warrantless search of an employee's personal vehicle based on an unsubstantiated and anonymous report.

**STATEMENT OF CLAIMS**

**COUNT I**

42 U.S.C. § 1983 –Violation of the Fourth Amendment and
Plaintiffs' Right to be Free from Unreasonable Searches and Seizures
Pursuant to the Fourth and Fourteenth Amendments to the United States Constitution
(Plaintiffs v. Defendant City of Chicago)

76.     Plaintiffs incorporate by reference the allegations in Paragraphs 1 through 75, as if fully set forth herein.

77.     The Fourth Amendment prohibits a public employer from conducting unreasonable searches and seizures of the personal property of a public employee.

78.     Defendant Chicago, through its CFD employees, have implemented, enforced, encouraged and sanctioned a CFD policy, practice and/or custom of seizing and searching the personal property of Plaintiffs without the reasonable articulable suspicion of illegality required by the Fourth Amendment.

79.     Defendant's constitutional abuses and violations were, and are, directly and proximately caused by CFD policies, practices and/or customs devised, implemented, enforced, encouraged and sanctioned by Defendant Chicago in the following ways: (a) failure to adequately and properly screen, train, and supervise IAD personnel; (b) the failure to properly and adequately monitor and discipline IAD personnel; and (c) the overt and tacit encouragement and sanctioning of, and the failure to rectify, IAD's practice of seizing and searching the personal property of CFD employees without reasonable suspicion.

80.     On February 27 and 28, 2025, CFD employees conducted a warrantless search of Plaintiffs' personal vehicles for a firearm based on an anonymous report that Defendant failed to suitably corroborate before conducting these vehicle searches.

81. Such conduct by CFD employees, acting in the course of their employment as employees of the City of Chicago, was done in a knowing, willful, wanton, reckless, and bad faith manner, which violates clearly established constitutional provisions and rights which a reasonable person would have known.

82. As a direct, foreseeable, and proximate result of Defendant's unlawful conduct, Plaintiffs' Fourth Amendment rights have been violated and Plaintiffs have suffered, and continue to suffer, mental and emotional pain and suffering, and other injuries and irreparable harm.

83. Plaintiffs fear that their personal property will continue to be seized and searched under this current policy, practice, and/or custom. Plaintiffs seek to stop Defendant's enforcement of this current policy, practice, and/or custom to relieve themselves of this constant apprehension.

84. Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendant is enjoined from continuing the CFD's policy, practice and/or custom of seizing and searching the personal property of Plaintiffs, and the policies, practices and/or customs that have directly and proximately caused such constitutional abuses.

85. Under 42 U.S.C. § 1983, "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." Thus, Defendant is fully liable to Plaintiffs for their injuries

17

resulting from Defendant's searches and seizures of Plaintiffs' personal property in violation of the Fourth Amendment.

86.     Defendant is also liable for Plaintiffs' reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT II

42 U.S.C. § 1983 –Violation of the Fourth Amendment and
Plaintiffs' Right to be Free from Unreasonable Searches and Seizures
Pursuant to the Fourth and Fourteenth Amendments to the United States Constitution
(Plaintiffs v. Defendants Cogswell and Mikha'il)

87.     Plaintiffs incorporate by reference the allegations in Paragraphs 1 through 75, as if fully set forth herein.

88.     Defendants Cogswell and Mikha'il's search and seizure of the personal vehicles of Plaintiffs on February 27 and 28, 2025, was performed under color of law and without any reasonable suspicion of illegality or other constitutionally required grounds.

89.     As a direct, foreseeable, and proximate result of Defendants' unlawful conduct, Plaintiffs' Fourth and Fourteenth Amendment rights have been violated.

90.     As a direct, foreseeable, and proximate result of Defendants' unlawful conduct, Plaintiffs have suffered, and continue to suffer, mental and emotional pain and suffering, and other injuries and irreparable harm.

91.     Under 42 U.S.C. § 1983, "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." Thus, Defendants are fully liable to Plaintiffs for their

18

injuries resulting from Defendants' searches and seizures of Plaintiffs' personal property in violation of the Fourth and Fourteenth Amendment.

92.     Defendants are also liable for Plaintiffs' reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

<u>**COUNT III**</u>
Violation of the Illinois Constitution
Plaintiffs' Right to be Free from Unreasonable Searches and Seizures
Pursuant to Article I, Section 6 of the Illinois Constitution
(Plaintiffs v. Defendant City of Chicago)

93.     Plaintiffs incorporate by reference the allegations in Paragraphs 1 through 75, as if fully set forth herein.

94.     Section 1, Article 6 of the Illinois Constitution prohibits a public employer from conducting unreasonable searches and seizures of the personal property of a public employee.

95.     Defendant Chicago, through its CFD employees, have implemented, enforced, encouraged and sanctioned a CFD policy, practice and/or custom of seizing and searching the personal property of Plaintiffs without the reasonable articulable suspicion of illegality required by the Illinois Constitution.

96.     Defendant's constitutional abuses and violations were, and are, directly and proximately caused by CFD policies, practices and/or customs devised, implemented, enforced, encouraged and sanctioned by Defendant Chicago in the following ways: (a) failure to adequately and properly screen, train, and supervise IAD personnel; (b) the failure to properly and adequately monitor and discipline IAD personnel; and (c) the overt and tacit encouragement and sanctioning of, and the failure to rectify, IAD's practice of seizing and searching the personal property of CFD employees without reasonable suspicion.

97.     On February 27 and 28, 2025, CFD employees conducted a warrantless search of Plaintiffs' personal vehicles for a firearm based on an anonymous report that Defendant failed to suitably corroborate before conducting these vehicle searches.

98.     Such conduct by CFD employees, acting in the course of their employment as employees of the City of Chicago, was done in a knowing, willful, wanton, reckless, and bad faith manner, which violates clearly established constitutional provisions and rights which a reasonable person would have known.

99.     As a direct, foreseeable, and proximate result of Defendant's unlawful conduct, Plaintiffs' rights under the Illinois Constitution have been violated and Plaintiffs have suffered, and continue to suffer, mental and emotional pain and suffering, and other injuries and irreparable harm.

100.    Plaintiffs fear that their personal property will continue to be seized and searched under this current policy, practice, and/or custom. Plaintiffs seek to stop Defendant's enforcement of this current policy, practice, and/or custom to relieve themselves of this constant apprehension.

101.    Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendant is enjoined from continuing the IAD's policy, practice and/or custom of seizing and searching the personal property of Plaintiffs, and the policies, practices and/or customs that have directly and proximately caused such constitutional abuses.

**COUNT IV**
Violation of the Illinois Constitution
Plaintiffs' Right to be Free from Unreasonable Searches and Seizures
Pursuant to Article I, Section 6 of the Illinois Constitution
(Plaintiffs v. Defendants Cogswell and Mikha'il)

102.    Plaintiffs incorporate by reference the allegations in Paragraphs 1 through 75, as if fully set forth herein.

103.    Defendants Cogswell and Mikha'il's search and seizure of the personal vehicles of Plaintiffs on February 27 and 28, 2025, was performed under color of law and without any reasonable suspicion of illegality or other constitutionally required grounds.

104.    As a direct, foreseeable, and proximate result of Defendants' unlawful conduct, Plaintiffs' rights under the Illinois Constitution have been violated.

105.    As a direct, foreseeable, and proximate result of Defendants' unlawful conduct, Plaintiffs have suffered, and continue to suffer, mental and emotional pain and suffering, and other injuries and irreparable harm.

**COUNT V**
*Respondeat Superior*
(Plaintiffs v. Defendant City of Chicago)

106.    Plaintiffs incorporate by reference the allegations in Paragraphs 1 through 75, as if fully set forth herein.

107.    Defendants Cogswell and Mikha'il were, at all times relevant, employees of Defendant Chicago, acting in the course of their employment as employees of CFD.

108.    Pursuant to the common laws of the State of Illinois, Defendant Chicago, as principal, is responsible for the acts of its employees and agents which are committed in the course of their employment.

## COUNT VI

Indemnification
(Plaintiffs v. Defendant City of Chicago)

109.    Plaintiffs incorporate by reference the allegations in Paragraphs 1 through 75, as if fully set forth herein.

110.    Illinois statute (745 ILCS 10/9-102) provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities

111.    Defendants Cogswell and Mikha'il were employees, members, and agents of the City of Chicago, acting at all relevant times within the scope of their employment with the CFD in committing the misconduct described within this Complaint.

112.    Defendant Chicago is responsible to pay any judgment entered against Defendants Cogswell and Mikha'il. Plaintiffs therefore demand judgment against Defendant Chicago, in the amounts awarded to Plaintiffs against Defendants Cogswell and Mikha'il as damages, costs, interest, and any other relief which may be available to Plaintiffs.

## REQUESTS FOR RELIEF

Accordingly, Plaintiffs request that this Court enter judgment on their behalf and enter an order directing the award of other relief, as follows:

A.    Declaring that Defendants unlawfully violated Plaintiffs' rights and privileges secured by the Fourth and Fourteenth Amendments to the United States Constitution when Plaintiffs' personal vehicles were seized and searched on February 27 and 28, 2025;

B.    Declaring that Defendants unlawfully violated Plaintiffs' rights and privileges secured by the Illinois Constitution when Plaintiffs' personal vehicles were seized and searched on February 27 and 28, 2025;

22

C.     Declaring that Defendants have a policy, practice, and/or custom that deprives CFD employees of rights and privileges secured by the Fourth and Fourteenth Amendments to the United States Constitution;

D.     Declaring that Defendants have a policy, practice, and/or custom that deprives CFD employees of rights and privileges secured by the Illinois Constitution;

E.     Entering a permanent injunction restraining and preventing CFD employees from seizing and searching the personal vehicles of Plaintiffs; Defendants from using and relying upon anonymous and/or uncorroborated tips as a basis to conduct searches and seizures of the personal property of CFD employees; and from otherwise violating their obligations under the United States Constitution and Illinois Constitution with respect to Plaintiffs and all other persons similarly situated;

F.     Ordering Defendants to adopt and implement policies and procedures that identify, correct, and prevent the unlawful conduct described herein that has deprived Plaintiffs of rights, privileges, or immunities secured or protected by the United States Constitution and Illinois Constitution;

G.     Awarding Plaintiffs compensatory damages for pain, suffering, and other injuries and irreparable harm;

H.     Awarding Plaintiffs punitive damages to redress the knowing, willful, wanton, reckless, and bad faith nature of Defendants' violation of Plaintiffs' Constitutional rights;

I.     Awarding Plaintiffs attorneys' fees and costs;

J.     Awarding Plaintiffs any other relief to which they are entitled and/or which this Court deems necessary and proper.

**A jury trial is demanded for all claims triable by jury.**

Respectfully submitted,

/s/ Sammy Sugiura

Sammy Y. Sugiura
MOONEY, GREEN, SAINDON, MURPHY
& WELCH, P.C.
1620 Eye Street, NW, STE 700
Washington, DC 20006
Phone: 202-783-0010
Fax: 202-7883-6088
ssugiura@mooneygreen.com

George Robinson
Chicago Fire Fighters Union Local 2
440 West 43rd Street
Chicago, Illinois 60609-2715
george.robinson@iaff-local2.org

*Counsel for Plaintiffs*